IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BRANDYWINE COMMUNICATIONS
TECHNOLOGIES, LLC,

    Plaintiff,

  v.

CISCO SYSTEMS, INC.,

    Defendant.
                                   /

No. C 12-01669 WHA

**ORDER REGARDING INITIAL RULE 26 DISCLOSURE REQUIREMENTS FOR DAMAGES IN PATENT ACTIONS**

## INTRODUCTION

In this patent-infringement action, the issue now presented is the extent to which Rule 26(a) requires a patent plaintiff to disclose and specify damages at the outset of the litigation even though some of the necessary information lies with the accused infringer. This order holds that the patent plaintiff must nonetheless do the best it can on pain of preclusion, subject to supplementation as more information becomes available.

## STATEMENT

Brandywine Communications Technologies, LLC, filed this action against Cisco Systems, Inc., alleging infringement of a patent. At the initial case management conference, the parties were given additional time to supplement their initial disclosures and were instructed to do so "on pain of preclusion, including full and faithful compliance with [Rule] 26(a)(1)(A)(iii)" (Dkt. No. 81).

In the present motion, Cisco remains unhappy about the uninformative nature of plaintiff's damages disclosure under Rule 26(a). We are still in the early stages of the case.

**ANALYSIS**

As part of the mandatory and self-executing initial disclosure requirements, Rule 26(a)(1)(A)(iii) states:

> A party must, without awaiting a discovery request, provide to the other parties a computation of each category of damages claimed by the disclosing party — who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

No controlling decision construes the rule in the patent-infringement context, so the following is this district judge's best reading, based on nearly forty years of work on both sides of the bench in our district courts, including many patent-infringement actions.

The systems sold by Cisco were available on the market and could have been studied, if not reverse-engineered before suit. If Brandywine is now seeking damages in the form of lost profits, it should now be in a position to state the extent of loss of its own sales of its own products in an approximate dollar amount and state how that amount was calculated. To be more specific, it should be able to identify each of its own products that compete (or have competed) with the accused products and explain how sales of its own specified products have been affected by the alleged infringement. This can and should be done even though discovery will produce more precise sales records for the accused products that will allow later for more accurate updates of estimates of lost profits. As the rule calls out, Brandywine should also now be in a position to make available for inspection and copying the unprivileged documents and other evidentiary materials on which it will rely for damages, save and except for those not yet known to it despite the type of diligent pre-suit investigation required by Rule 11. The foregoing relates to lost profits.

As for a reasonable royalty, as to each accused product, Brandywine should already be in a position to state the claimed royalty rate and state the claimed royalty base, and then multiply the two for a total, specifying the information by year. This can and should be done

now even though subsequent discovery may eventually warrant a modification of the calculation. As above stated, the rule further requires that the patent plaintiff make available for inspection and copying all unprivileged documents and other evidentiary material on which the reasonable royalty computation is based, providing a log for those withheld on claim of privilege. This must be done without waiting for a formal request. Although the rule does not say so expressly, it is a reasonable view of the rule — and this order so holds — that the computation must call out the particular materials relied on and identify them in some plausible way so as to clarify the basis for the disclosed computations.

If a reasonable royalty is claimed, and if the patent plaintiff is going to rely on any of the *Georgia Pacific* factors (as plaintiff here says it will), then the patent plaintiff must list each such asserted *Georgia Pacific* factor and identify all evidence it rely on for that factor, save and only except for such evidence as it could not be reasonably expected to possess (and does not possess) at the outset of the litigation. For example, with respect to the first two *Georgia Pacific* factors, a patent holder should already know the royalties it and/or its predecessors in interest have already received for licensing its own patent in suit and it should already know at least some of the license agreements it contends are comparable. On the other hand, to take a counterexample, with respect to the factor "the opinion testimony of experts," that item would usually remain in the future and would usually not be listed in the initial disclosure (unless the patent plaintiff perhaps intends to rely on previous testimony). The rule does not require a full exposition of the type required at trial or in an expert report but it does expressly require an initial computation and disclosure of the evidence that will be relied on to the full extent the patent plaintiff could or should know of it in the exercise of the type of pre-suit diligence required by Rule 11.

If a patent plaintiff already knows of a particular license agreement and may rely on it as a comparable for reasonable royalty purposes, then it should be so disclosed under Rule 26(a). The patent plaintiff should not be allowed to hold back that information as an insurance strategy until after it has studied the defendant's license portfolio via discovery. That scenario would allow the patent plaintiff to seize upon some rich agreement in the accused's portfolio and to construct an argument for its comparability while never revealing what it originally thought was

1  comparable. The initial contention should be disclosed straight away under Rule 26, on pain
2  of preclusion, subject to supplementation with "better" comparables from elsewhere as the
3  litigation proceeds. If fairness dictates, the jury will be told of the original comparables
4  even while the patent plaintiff may be permitted to argue for the more lucrative comparable.
5  The patent plaintiff should not be allowed to evade the duty to lay out its damages contentions
6  at the outset of the case merely because it hopes it can frame more handsome contentions after
7  discovery.

8  Only to the extent that, and only for so long as, the patent plaintiff is unable, despite its
9  Rule 11 obligations, to fully satisfy the Rule 26(a) disclosure requirement, a patent plaintiff is
10 temporarily excused from disclosing a shortfall in information (but it must disclose the rest at
11 the outset). The burden is on the patent plaintiff to explain in its Rule 26 initial disclosures the
12 extent of any such disability and the reason therefor. This must be specific — such as, by way
13 of hypothetical example, "despite a diligent pre-suit investigation plaintiff has been unable to
14 learn even an approximation of the extent of sales of the accused product and will seek this data
15 in discovery." Again, that some material is as yet unknown does not excuse non-disclosure of
16 what is or should be known. Plaintiff is not required to do the impossible but is required to do
17 the best it can. Just because some items cannot yet be disclosed does not mean that nothing
18 should be disclosed. If the Court later determines that the disclosure should have and could
19 have reasonably been more complete, then, to that extent, preclusion or other sanctions may
20 well be required.

21                              *          *          *

22 For its part, the accused infringer must disclose under Rule 26(a)(1)(A)(iii) any license
23 agreement known by it (such as, for example, any license agreement in its own portfolio) that
24 it may use to support its own view of a reasonable royalty. It may not hold back this disclosure
25 merely because it has not yet seen the patent plaintiff's damages study. Of course, the accused
26 infringer is not required by the rule to provide a computation.

27 The foregoing relates to *disclosures*. To address a related and recurring discovery
28 problem, this final paragraph is added regarding the problem of each side cherry-picking the

4

other side's license portfolio, that is, the selection of the most lucrative (or least lucrative) of the other side's licenses as most comparable (regardless of how inapt it really is). The Court would be open to considering a stipulation or unilateral motion to allow the portfolios to be produced in discovery with the dollar and percentages redacted. Then, the other side would have to designate the top two most comparable ones (in rank order) and then (and only then) the redacted material for those two would then be produced. This would reduce the problem of glare from large (or small) dollars and percentages interfering with clear vision as to comparability. The details would have to be worked out by stipulation or by motion. (Neither side's *disclosed* agreements, of course, may be redacted unless allowed for other reason.)

## CONCLUSION

In the instant motion Cisco requests that this order preclude Brandywine's claims for damages. At this point, that would be too drastic a remedy. Instead, Brandywine has **21 CALENDAR DAYS** to comply with this order and submit supplemental disclosures with regards to its damages contentions, making available within said period for inspection and copying the relied-on documents and other evidentiary materials. Cisco likewise has **21 CALENDAR DAYS** to conform its disclosures to this order's requirements. Thereafter, preclusion may be in order. Except to the foregoing extent, the motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 13, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE